## Commonwealth *vs.* James Yates.

No. 03-P-899.

Suffolk. June 1, 2004. - November 23, 2004.

Present: Cypher, Smith, & Doerfer, JJ.

*Homicide. Practice, Criminal,* Plea. *Constitutional Law,* Plea. *Due Process of Law,* Plea.

This court reversed a Superior Court judge's denial of a criminal defendant's motion to withdraw his guilty plea, where the plea was not made intelligently, given that no discussion occurred at the plea colloquy concerning the possibly mitigating issue of provocation arising from the defendant's admission that he stabbed the victim, a prostitute, after she told him she tried to give him acquired immune deficiency syndrome. [497-499]

INDICTMENT found and returned in the Superior Court Department on May 9, 1995.

A plea of guilty was accepted by *Robert A. Mulligan,* J., and a motion to withdraw that guilty plea, filed on December 13, 2000, was heard by him.

*Richard J. Fallon* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

Doerfer, J. On an indictment for murder in the first degree the defendant pleaded guilty to so much of the indictment as alleged murder in the second degree. Pursuant to Mass.R.Crim.P. 30, 378 Mass. 900 (1979), he subsequently sought to withdraw his plea on the grounds that he was not advised by his counsel or the court on the essential elements that the prosecution would have to prove where the facts, he claims, raised the issue of provocation. He claims that his admissions on factual matters at the plea colloquy did not establish that provocation was not a live issue.

The motion judge (who was the judge who accepted the plea)

concluded that the facts relating to the event did not raise the issue of provocation and thus that the defendant admitted to facts that established his guilt without the need for either the court or counsel to explain further the law relating to provocation and the circumstances under which provocation would reduce murder to manslaughter. We conclude that the facts before the judge during the plea colloquy raised the issue of provocation, which was not explained to the defendant either by the judge or defendant's counsel, and rule that the defendant should be permitted to withdraw his guilty plea.

*Facts.* At the plea hearing, the defendant acknowledged that he wished to plead guilty to so much of the indictment as charged him with murder in the second degree. The judge explained that before he could accept the defendant's guilty plea he had to be satisfied that the defendant was "admitting to the facts that show the basis for a second degree murder plea." Before accepting his plea, the judge elicited from the defendant that the defendant was twenty-five years old, had completed eleven years of school, had never been treated for any psychiatric problems or mental illnesses, and had not had any drugs or alcohol during the previous two days. Thereafter, the defendant admitted stabbing the victim with a kitchen knife. He further admitted to "sort of" remembering stabbing the victim. After the defendant stated that he did not know if he intended to harm the victim, the judge inquired generally about the events of that evening.[1]

The defendant then testified that he and the victim were in his bedroom and that she was working as a prostitute at the time. The defendant further testified that around approximately 2:00 A.M. and after they had been drinking, the victim asked him if he wanted sex. He agreed, telling her that he wanted to use a condom because he was involved with someone else. While they were having sex, the condom came off, and the defendant stopped and "asked her what she was doing. She

---

[1]The only narrative of the facts on the record at the plea hearing were those stated by the defendant. The district attorney was not invited to read or state the facts. If there was a police report or other written narrative available to the judge, the record does not so indicate. The judge did not put any facts on the record other than those stated by the defendant.

says I just want to do it regular." The defendant then got another condom and they finished having sex.

The defendant also testified that after washing up in the bathroom, he heard the victim on the phone saying, "[W]ell, I gave it again, I did it again." The defendant asked what the victim was talking about and after a verbal confrontation, the victim said, "[W]ell, I've got AIDS and I tried to give you AIDS and I hope you've got it, motherfucker," and that is when the defendant stabbed her.

The defendant explained, "[T]here was a knife in my bedroom . . . on the edge of my bed in one corner and when I came in the room it was like — it was on the top of my bed and the handle was kind of sticking out and when she said it, I was in shock. I was in shock." The defendant then looked at the knife, "and I was looking at her and we looked together and I just went for it."

The defendant admitted that he had stabbed the victim at least twice, and in answer to the judge's inquiry as to whether he intended to injure the victim, the defendant replied, "I guess so, yes." The defendant also admitted that although he saw the victim bleeding to death, he did not call for emergency help. The defendant then agreed that he understood the trial rights that he was waiving by pleading guilty and that no one had forced him or persuaded him to plead guilty. The defendant then answered "guilty" when the court clerk asked for the defendant's plea.

The transcript of the plea colloquy does not contain an explanation by the plea judge of the elements of murder in the second degree or a representation from plea counsel that he explained to the defendant the elements of murder in the second degree prior to the defendant's plea.[2] In his affidavit filed in conjunction with his motion to withdraw his guilty plea, the

---

[2]The attorney who represented the defendant at the plea hearing could not be located by counsel who represented the defendant at the hearing on his motion to withdraw his plea. There was a suggestion in the record that the attorney had left the practice of law. Thus there was no affidavit of counsel relating to what if any explanation he had given to the defendant as to what the Commonwealth would have to prove to establish malice as part of its burden to prove murder in the second degree, where, as here, there was a question of provocation. The judge did not inquire of the defendant or his at-

defendant states that when trial counsel visited him two weeks before his scheduled trial date, counsel urged the defendant to plead guilty to murder in the second degree, but that the defendant agreed only to plead to manslaughter. The defendant further states that his counsel did not meet with him again before his scheduled trial date, and that when he was brought into court, he was asked by counsel if he was ready to plead to murder in the second degree. He further notes that his trial counsel did not explain to him the concepts of "malice," "malice aforethought," or "adequate or reasonable provocation."

*Analysis.* The general law of provocation is that "[i]f a person kills another in the heat of passion, which is occasioned by adequate and reasonable provocation, or in sudden combat, then even though that person had an intent to kill, the killing is designated manslaughter and not murder because of the mitigating circumstances." *Commonwealth* v. *Whitman*, 430 Mass. 746, 750-751 (2000), quoting from *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998). Thus, "[i]n a murder case where evidence has raised the possibility of provocation and voluntary manslaughter may be at issue, proof of malice requires proof of the absence of provocation." *Commonwealth* v. *Whitman*, *supra* at 751-752.

Adequate and reasonable provocation is provocation that "would be likely to produce in an ordinary man such a state of passion, anger, fear, fright or nervous excitement as might lead to an intentional homicide and, moreover, such as did actually produce such a state in the mind of the slayer." *Commonwealth* v. *Anderson*, 408 Mass. 803, 807 (1990), quoting from *Commonwealth* v. *Rooney*, 365 Mass. 484, 494 (1974). "The general rule is that words alone are insufficient provocation to reduce murder to manslaughter." *Commonwealth* v. *LeClair*, 429 Mass. 313, 316 (1999). See *Commonwealth* v. *Groome*, 435 Mass. 201, 220 (2001) ("Ordinarily, words alone do not give rise to adequate provocation"). Sometimes words coupled with circumstances are enough, however, and a recognized exception to the rule is when "the words convey inflammatory informa-

torney whether the attorney had explained what the Commonwealth would have to prove to make out a case of murder in the second degree.

tion to the defendant." *Commonwealth* v. *LeClair, supra* at 317. See *ibid.* ("A sudden oral revelation of infidelity may be sufficient provocation to reduce murder to manslaughter"); *Commonwealth* v. *Groome, supra* at 220, quoting from *Commonwealth* v. *Benjamin,* 430 Mass. 673, 680 (2000) ("[I]n certain circumstances, words may convey information constituting adequate provocation to render an unlawful killing voluntary manslaughter"). See also *Commonwealth* v. *Bermudez,* 370 Mass. 438, 440 (1976) ("The existence of sufficient provocation is not foreclosed absolutely because a defendant learns of a fact from oral statements rather than from personal observation").[3]

The circumstances revealed here required that the defendant understand that provocation was a live issue and that he admit that he did not act on the basis of reasonable provocation (or at least that he did not want to take the risk that the jury would find that the Commonwealth had proved lack of provocation, see *North Carolina* v. *Alford,* 400 U.S. 25 [1970]; *Commonwealth* v. *Nikas,* 431 Mass. 453 [2000]).[4] Because no discussion occurred at the plea colloquy concerning the possibly mitigating issue of provocation, the defendant's plea was not

---

[3]The passage of time after the blow was struck, during which the victim lay bleeding and the defendant did not summon help, is not, as argued by the Commonwealth, relevant to the issue of provocation as some kind of cooling off period, thus removing the provocation issue from consideration at the plea. The question is whether the defendant had time to cool off between the incident of provocation and the striking of the blow. His conduct following the blow is not relevant to the issue of provocation. See *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978).

[4]In his affidavit in support of his motion to withdraw his plea, the defendant stated as follows: "My attorney never explained the concept of 'malice' or 'malice aforethought' to me. I did know that a killing committed in the heat of passion could change it from murder to manslaughter, but I did not discuss this as a defense in my case with my attorney, and we did not discuss adequate or reasonable provocation. We never sat down and discussed the manslaughter defense. My attorney was concerned that because of the claim that it took a long time for [the victim] to die and her suffering that I might be found guilty of first degree murder. I did not understand the nature of murder versus the provocation defense to murder." These facts do not show that he was adequately informed or aware of the issue of provocation as it applied in this case.

made intelligently.[5] See generally *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997); *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. 917, 918 (2000). Cf. *Commonwealth* v. *Whitman*, 430 Mass. at 751-752. On the special circumstances of this case we must reverse the denial of the defendant's motion to withdraw his guilty plea.[6]

The order denying the defendant's motion to withdraw the guilty plea is vacated, and an order shall enter allowing the motion. The judgment is reversed and the finding is set aside.

*So ordered.*

---

[5]As stated above, since malice is an element of murder and since adequate and reasonable provocation negates the element of malice, the Commonwealth's burden to prove malice translates into a burden to prove that the defendant did not act on reasonable and adequate provocation where the facts fairly raise the provocation issue. See *Commonwealth* v. *Whitman*, 430 Mass. at 751-752. Contrast *Commonwealth* v. *Begin*, 394 Mass. 192, 198 (1985) (facts adopted at plea hearing did not raise issue of provocation).

Although the better practice is to ascertain that the defendant is aware that he is waiving "defenses" by pleading guilty, see, e.g., *United States* v. *Frye*, 738 F.2d 196, 199 (7th Cir. 1984); *United States* v. *Alvarez-Del Prado*, 222 F.3d 12, 16 (1st Cir. 2000); Smith, Criminal Practice and Procedure § 1246 (2d ed. 1983 & Supp. 2004), we do not comment on the need to ascertain that the defendant is aware of and is waiving his right to raise all possible defenses in order to make his plea "knowing." Furthermore, we do not regard the issue of provocation as a "defense" in the context of this case. When we have characterized provocation as a defense to murder it has been in the context of correcting the pre-*Acevedo* notion that provocation is an element of manslaughter. See *Commonwealth* v. *Acevedo*, 427 Mass. 714 (1998); *Commonwealth* v. *Gilmore*, 59 Mass. App. Ct. 231, 237 (2003).

We note further that, in seeking to withdraw his guilty plea, the defendant did not need to show that the omissions in the plea colloquy were material to his decision to plead guilty. See *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 718-719 (1997) (absent showing of materiality, a plea may be considered voluntary and intelligent notwithstanding failure to inform a defendant of "intra-trial" rights, e.g., the right to confront witnesses and the privilege against self-incrimination; no such showing of materiality is required as to the failure to ascertain the defendant's knowledge of the elements of the charges against him). In the instant matter, the right of the defendant to require that the Commonwealth prove malice is not an intra-trial right.

[6]We need not address the defendant's additional claim of ineffective assistance of counsel.